[Civ. No. 2232.    Second Appellate District.—June 25, 1917.]

## Q. J. ROWLEY, Respondent, v. W. J. DAVIS, Appellant.

QUIETING TITLE—SUPPLEMENTAL COMPLAINT—AFTER-ACQUIRED TITLE.— In an action to quiet title, the plaintiff has no right to file a supplemental complaint showing after-acquired title, if in fact he had no title at the commencement of the action.

ID.—CROSS-COMPLAINT—DEFENSE OF AFTER-ACQUIRED TITLE—RIGHT OF PLAINTIFF.—Where, however, in an action to quiet title, a cross-complaint is filed after the plaintiff had acquired the title of a defendant and cross-defendant, new issues are tendered thereby and a cause of action set up relating to the date of the filing of the cross-complaint, and the after-acquired title of the plaintiff is available to him as a defense to the cross-action, and provable under his claim of ownership pleaded in his answer to the cross-complaint.

ID.—DEED INTENDED AS MORTGAGE—RECORDED DECLARATION—INSUFFICIENT NOTICE.—In an action to quiet title wherein the plaintiff claimed under a deed, which was in fact intended as a mortgage, a recorded instrument containing a declaration of the grantor that the deed was intended as a mortgage was not sufficient to impart notice, where such declaration nowhere defined any instrument affecting the title to the land in controversy.

ID.—DEFEASIBLE GRANT—RECORDATION TO IMPART NOTICE—RIGHTS OF SUBSEQUENT PURCHASERS WITHOUT ACTUAL NOTICE.—Under section 2950 of the Civil Code, providing that when a grant of real property

purports to be an absolute conveyance, but is intended to be defeasible on the performance of certain conditions, such grant is not defeated or affected as against any person other than the grantee, or his heirs or devisees, or persons having actual notice, unless an instrument of defeasance, duly executed and acknowledged, shall have been recorded in the office of the county recorder of the county where the property is situated, subsequent purchasers from such grantee, who are neither heirs nor persons having actual notice of the conditions affecting the deed, are not bound to search the records to ascertain whether a purported declaration of defeasance has been made.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. S. E. Crow, Judge presiding.

The facts are stated in the opinion of the court.

Charles Lantz, and Davis, Lantz & Wood, for Appellant.

Kendrick & Ardis, and Geo. W. Adams, for Respondent.

CONREY, P. J.—The defendant appeals from the judgment and from an order denying his motion for a new trial.

The complaint stated a cause of action against defendant Davis and others to quiet the plaintiff's title to land in Los Angeles County, described as lot 38 of the Monte Vista tract, containing twenty acres, as shown by a recorded map. The answer of defendant Davis denied plaintiff's ownership of the west three acres of the north one-half of said lot, and alleged that said defendant is the owner of those three acres. By cross-complaint the same defendant alleged that he is the owner of said west three acres, and set forth the transactions by virtue of which he claims to have acquired title. Cross-complainant's claim of title is based upon a sheriff's deed issued to him as the purchaser at a sheriff's sale made pursuant to a writ of execution upon a judgment rendered against F. H. Barclay and A. G. Hupp. The sheriff's sale took place on September 5, 1906, and the deed to cross-complainant was made on September 10, 1907. The cross-complaint further alleged that Anna G. Hupp, on March 6, 1899, executed an instrument in the form of a deed to Oscar Doolittle, which deed was recorded July 3, 1900, and included two and one-half acres along the westerly side of the north half of said lot

38; that said deed was in fact a mortgage made to secure the payment of an indebtedness to said Doolittle, and that the cross-defendants, before receiving a deed to said property, had notice of this fact; that at the time of said levy, sale, and deed said property stood of record in the name of Oscar Doolittle. Cross-complainant prayed judgment that plaintiff take nothing by his action, except as to those portions of lot 38 not including said west three acres; that if said instrument executed to Oscar Doolittle be determined to be a mortgage, that the court ascertain the amount of money loaned by Doolittle to Anna G. Hupp, and the amount, if any, which is due to said Doolittle, or his successors in interest, upon said loan; and that plaintiff be enjoined from asserting any claim to said three acres, adversely to cross-complainant. The plaintiff answered the cross-complaint and made denials which covered the material issues tendered thereby. The findings and decree confirm the plaintiff's title as claimed by him and negative the claims asserted by the defendant.

The evidence includes the plaintiff's chain of title as shown by recorded conveyances. From that evidence it appears that at the time of commencement of this action on October 17, 1911 (assuming that said instrument executed by Anna G. Hupp to Oscar Doolittle was a deed of grant and was not a mortgage), the title to the west 156 feet of the north half of lot 38, amounting to a little more than two and one-third acres of land, was vested in one Alice Huse and not in the plaintiff; and that the plaintiff was the owner of all other portions of said lot.

The plaintiff Rowley also claimed title by adverse possession, as well as under deeds of transfer. He testified that he had possession of the property described in the complaint since December, 1901. "My use of the tract which I occupied consisted of planting to grain, and part in orchard, and I rented part as a camping-ground. My claim of title is under a deed from J. H. F. Jarchow. I have paid all taxes levied against that property since I purchased it down to the present time, and I occupied it during all said time, claiming it as my own against all persons and the whole world." Tax receipts were produced by the witness for the five years beginning with 1907, and for one other year, on portions of lot 38, but none of them included the west two and one-half acres. Later in his testimony he said that he had possession of the

whole tract "until the adverse possession of Mr. Hansen and then Mr. Huse," and that the strip claimed by Mr. Huse extended back a depth of 140 feet on the west side. "The balance of the tract I had undisputed possession of during the past ten or eleven years." Section 323 of the Code of Civil Procedure provides that "for the purpose of constituting an adverse possession by any person claiming a title founded upon a written instrument, or a judgment or decree, land is deemed to have been possessed and occupied in the following cases: 1. Where it has been usually cultivated or improved; 2. Where it has been protected by a substantial inclosure; 3. Where, although not inclosed, it has been used for the supply of fuel, or of fencing timber for the purposes of husbandry, or for pasturage, or for the ordinary use of the occupant; . . . " There is no evidence that the land was protected by an inclosure, or that it had been used for any of the purposes named in subdivision 3. All of the testimony heard was directed to show that the land had been "usually cultivated or improved" by the plaintiff. To the extent that his use of the tract consisted in "planting to grain and part in orchard," he complied with the requirements of the statute. To the extent that he "rented part as a camping-ground," such use of the property did not comply with the statute. In his testimony the plaintiff did not say how much of the land was used as camping-ground; but other testimony in the case indicates in a general way that the camping-ground was located on the western side of lot 38. We think that the evidence was not sufficient to sustain Rowley's claim of title by adverse possession, so far as the west 156 feet of the north half of lot 38 is concerned.

Although, as we have stated, the record title to the west 156 feet of the north half of lot 38 at the time of commencement of this action apparently was vested in Alice Huse and not in the plaintiff, it should here be noted that, without objection from the defendant, the court received in evidence a deed dated April 3, 1912, recorded June 25, 1912, whereby Alice Huse conveyed to the plaintiff Q. J. Rowley all of her interest in said lot 38.

Referring to the record thus presented, appellant insists that the judgment should be reversed because the action must be determined upon the facts as they existed at the time of the commencement of the suit, "Rowley not having pleaded

any after-acquired title." It is true that the plaintiff did not attempt to supplement his complaint by a statement showing title acquired after the action was commenced. Also it is the law that he would not have a right to file a supplemental complaint showing after-acquired title, if in fact he had no title at the commencement of the action. (*Imperial Land Co.* v. *Imperial Irr. Dist.*, 173 Cal. 668, [L. R. A. 1916D, 676, note, 161 Pac. 116].) But the cross-complaint of the defendant Davis was not filed until after plaintiff Rowley had acquired the title of the defendant and cross-defendant Alice Huse. By filing that cross-complaint the cross-complainant tendered new issues whereby he set up a cause of action which relates to the date of filing the cross-complaint. This he had the right to do. (*Johnson* v. *Taylor*, 150 Cal. 201, 208, [119 Am. St. Rep. 181, 10 L. R. A. (N. S.) 818, 88 Pac. 903].) The fact that Rowley had at that time acquired the title of Mrs. Huse was available to him as a defense to the cross-action and was provable under his claim of ownership as pleaded by his answer to the cross-complaint. If this were not so, a defendant by filing a cross-complaint would be able to prevent the plaintiff from dismissing an action which had been prematurely brought, and might thereby obtain "on the merits" a judgment which possibly would permanently cut out the just rights of the plaintiff by preventing him from thereafter litigating the title with the cross-complainant. We therefore are of the opinion that the judgment should be sustained, if the evidence is sufficient to support Rowley's title as existing at the time of filing the cross-complaint.

From the deeds shown in evidence we are satisfied that at the time of the execution of the deed by which it is claimed that Anna G. Barclay (who afterward became Anna G. Hupp) purported to convey to Oscar Doolittle two and one-half acres along the west side of the north half of lot 38 of the Monte Vista tract, she was not the owner thereof. But for the purposes of this decision the situation may be considered to be the same as if she had been such owner. On July 30, 1896, there had been recorded a deed dated March 23, 1890, whereby Mary L. Barclay (a sister of Anna G. Barclay) purported to convey to Anna G. Barclay the west 156 feet of the north half of said lot 38. At that time the title thereof apparently was vested in Mary M. Barclay, their mother. Later, however, by mesne conveyances, the title of

Mary M. Barclay to said west 156 feet passed to Mary L. Barclay, and that title inured to the benefit of her previous grantee, Anna G. Barclay. The apparent title of Oscar Doolittle having passed by successive conveyances to Alice Huse and from her to the plaintiff Rowley, it follows that Rowley is entitled to recover herein as against the cross-complainant, unless it can be shown that the deed of Anna G. Barclay to Doolittle was in fact a mortgage as alleged by the cross-complaint; and unless it can be shown further that Homer A. Hanson in purchasing the property from Doolittle, and that Mrs. Huse in purchasing the same from Hansen, and Rowley in taking his deed from Mrs. Huse, had actual or constructive notice of the fact that the title really was not vested in Doolittle. The purchases by Hansen and by Mrs. Huse were for value, and the deed from Mrs. Huse to Rowley was made upon a valuable consideration, in this, that it was ''in consideration of clearing the title.'' Rowley's testimony is that after settlement of this controversy he is to reconvey to Mrs. Huse the west 140 feet of the north half of lot 38.

In the transaction by which Hansen obtained a quitclaim deed from Oscar Doolittle, he was acting at the request of George Huse, the husband of Alice Huse, who desired to obtain the property. Hansen, however, procured the deed in his own name, in February, 1907, and paid the consideration with his own money. Thereafter and for a separate consideration, he conveyed to Mrs. Huse. Neither Hansen nor Mr. or Mrs. Huse or Rowley ever had actual knowledge of any mortgage transaction affecting the deed made by Anna G. Barclay to Oscar Doolittle. Hansen's testimony was that before he obtained his deed from Doolittle he procured from a title company a report ''of all the instruments affecting the title of the property'' from the time of the subdivision of the tract to the time of the search. A. L. Rhodes, vice-president of the Title Abstract & Trust Company by which said report was made, testified that his company made an examination of all transactions and instruments of record in the county ''affecting the title'' of said lot 38 subsequent to the subdivision of the tract in 1887 to the time of search in November, 1906; that that report was furnished by the company to Dr. Hansen for his examination. The evidence shows, without conflict, that the deed to Doolittle was in fact intended as a mortgage, to secure a loan.

Cross-complainant offered in evidence the record of a document signed "Anna Gladys Hupp, formerly known as Annie G. Barclay, Annie Gladys Barclay, and Anna Gladys Barclay," with an annexed certificate of acknowledgment by a notary public, which document was recorded in the record of deeds of the county recorder's office of Los Angeles County on February 20, 1906. In this document Mrs. Hupp refers to certain recorded instruments previously executed by her to Oscar Doolittle, and declares that said instruments were mortgages to secure the payment of money and were not intended to convey any title in or to said premises. The plaintiff objected to said instrument being received or considered in evidence and the objection was sustained. Appellant claims that in that ruling the court was in error and that thereby he was prevented from establishing a fact which, together with the other evidence, necessarily would sustain his title. In support of this contention, he further claims that Hansen and Huse, by reason of the document in question, had actual as well as constructive notice that the Hupp-Doolittle deed was in fact only a mortgage. Here we must take note that the said recorded declaration made by Mrs. Hupp does not contain any description of the premises in controversy. It refers to a recorded instrument purporting to convey to Doolittle described portions of lot *39* of the Monte Vista tract, and then refers also to "that certain instrument in writing, in form a deed, bearing date March 6, 1899, made by Anna Gladys Barclay to Oscar Doolittle and being the same deed last above mentioned and recorded July 3, 1900, in said county recorder's office, recorded in book 1374, page 154, of deeds, Los Angeles County records, after certain alleged corrections were purported to be made in said deed." Thus we see that the declaration nowhere defines any instrument affecting the title to any portion of lot 38. On these facts the declaration could not in any event impart actual notice of an interest claimed in lot 38, even if it had been read by a person purchasing from Doolittle.

We are further of the opinion that the recorded declaration of the grantor made as above stated, even if the "alleged corrections" referred to the land in controversy, did not impart the notice imputed by law, usually called constructive notice. Section *2950* of the Civil Code reads as follows: "When a grant of real property purports to be an absolute conveyance,

but is intended to be defeasible on the performance of certain conditions, such grant is not defeated or affected as against any person other than the grantee or his heirs or devisees, or persons having actual notice, unless an instrument of defeasance, duly executed and acknowledged, shall have been recorded in the office of the county recorder of the county where the property is situated.'' As we view the evidence, neither Hansen nor Mrs. Huse nor the plaintiff comes within any of the classes specified in the foregoing section. They are neither heirs nor devisees nor persons having actual notice of the alleged conditions affecting the deed made to Doolittle. As to them, that deed must be regarded as being what in its terms it purported to be, namely, a conveyance of land. (*Payne* v. *Morey*, 144 Cal. 130, [77 Pac. 831].) Appellant admits that the alleged declaration did not have the effect of a defeasance, and only seeks to use it as a means of charging Hansen and Huse with actual notice of its contents. Since there was no defeasance, and since the recorded deed showed that the grantor, Anna G. Barclay, had parted with her title, she was without power to destroy the effect of her deed by merely recording a declaration repudiating the instrument as a transfer of title. Subsequent purchasers from her grantee were not bound to search the records to ascertain whether some such declaration had been made.

On the facts shown herein appellant gains no advantage from the rule stated in section 19 of the Civil Code that ''every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he might have learned such fact.'' There is no evidence that the Hupp declaration ever was known to Hansen or to Mr. Huse or Mrs. Huse or to Rowley prior to the time of receiving their conveyances. The testimony on this point is limited to the statements above noted, that the abstract company's report included all instruments ''affecting the title'' of the property. The Hupp declaration was not an instrument affecting the title, and it may not be presumed that it was in the abstract company's report. The ruling of the court below excluding the record of that declaration was without error.

Appellant claims that Hansen, Huse, and Rowley were likewise charged with notice of title vested in Anna G. Hupp at the time of the levy and sale by the sheriff under the execu-

tion issued on a judgment against Mrs. Hupp. The levy was made in August, 1906. The sheriff's sale to appellant Davis was made on September 5, 1906, and recorded October 11, 1906, which was prior to the deed of Doolittle to Hansen. The levy was upon "the interest of the defendants in the west three acres of the north half of Lot 38," etc., "standing of record in the name of Oscar Doolittle." The sale, as recited in the sheriff's certificate of sale, was of the same west three acres, "standing of record in the name of Oscar Doolittle." The sheriff's deed to Davis bears date September 10, 1907, which was subsequent to the deed of Doolittle to Hansen and prior to Hansen's deed to Mrs. Huse. Appellant claims that by virtue of the facts stated, Hansen and Huse and the plaintiff were charged with notice that the purported deed to Doolittle was in fact a mortgage. We find no merit in this contention. The recording laws are intended as a protection and not as a menace to existing titles. It is against the policy of the law to permit the use of the public records as a means by which strangers to existing titles may cloud those titles and impair the values thereof to their owners. Thus it is held that an attaching creditor takes only whatever interest the debtor has. "The creditor is entitled to the same rights as the debtor had, and to no more." (*Bank of Ukiah* v. *Petaluma Savings Bank,* 100 Cal. 590, [35 Pac. 170].) So here, the act of the sheriff, who, at the instance of the judgment creditor of Mrs. Hupp, made sale of her "interest" in the described land, did not constitute any assertion of rights against her grantee, Doolittle, who had apparent title under a deed of the kind referred to in section 2952 of the Civil Code. After the sheriff's sale to appellant, as well as before that transaction (in the absence of some appropriate proceeding to assert the rights of the mortgagor or of cross-complainant Davis, or to enforce the mortgage, accompanied by notice as required by law), an innocent purchaser for value might accept a conveyance from Doolittle as safely as if the deed made had been in fact a grant and not a mortgage.

The judgment and order are affirmed.

James, J., and Works, J., *pro tem.,* concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 23, 1917.