## OSBURN v. FINKELSTEIN ET AL.

[No. 23,529. Filed February 5, 1920.]

1. APPEAL. — *Overruling Demurrer.* — *Memorandum.* — *Review.* — Where no memorandum was attached to demurrers to special paragraphs of answer, assigned error on the overruling of such demurrers presents no question for review. p. 92.

2. APPEAL.—*Pleading.*—*Sufficiency.*—*Review.*—The sufficiency of an answer may not be questioned on appeal by an assignment of error that it did not state facts sufficient to constitute a defense. p. 92.

3. APPEAL.—*Waiver.*—Assignments of error not briefed are waived. p. 92.

4. EVIDENCE.—*Judicial Admission.*—*Disclaimer.*—*Introduction by Plaintiff.*—*Effect.*—Where the defendant oil company in a suit to quiet title disclaimed as to all the land except ten acres, which it claimed under a reservation in a release of the remaining land, the plaintiff, after introducing the disclaimer in evidence to establish part of his *prima facie* case, may not object to the introduction of the release by the defendant on the ground of indefiniteness of the description, in view of an allegation in the disclaimer that the description was the same as that in the release and in a recorded plat executed contemporaneously therewith, which release and plat made the description definite, since the plaintiff, having introduced an inseparable judicial admission, will not be heard to object to the part that was unfavorable to his cause. p. 93.

5. MINES AND MINERALS.—*Release of Leased Land.*—*Sufficiency of Granting Clause.*—"*Quitclaim.*"—The granting clause in a lessee's release of land, leased for drilling purposes, which, after describing a reservation as to ten acres, contained the expression "hereby surrenders, cancels, annuls and releases said oil and gas lease as to the balance of the real estate," describing it, was sufficient without the word "quitclaim." p. 94.

6. MINES AND MINERALS.—*Productiveness of Land.*—*Lessee's Right to Determine.*—Under an oil and gas lease requiring the lessee to drill three test wells, whether productive or not, and a greater number only on condition that "oil or gas was found in paying quantities," it was for the lessee, without fraud or bad faith, to determine whether the production reached this standard. p. 96.

7. MINES AND MINERALS.—*Productiveness of Land.*—*Evidence as to Adjoining Land.*—*Experts.*—In view of provisions of an oil and

gas lease under which the law permitted the lessee to determine in good faith whether oil and gas was found in paying quantities, it was proper, in the lessor's suit to quiet title, in determining whether the lessee arbitrarily quit where prudent and experienced men acting in good faith would have proceeded, to admit in evidence the opinions of experts, based upon the results of explorations made on the premises and on adjacent lands.  p. 96.

From Sullivan Circuit Court; *William H. Bridwell,* Judge.

Action by Allen T. Osburn against Jacob R. Finkelstein and another. From a judgment for the defendants, the plaintiff appeals. (Transferred from the Appellate Court under §1399 Burns 1914, Acts 1901 p. 565, §15.) *Affirmed.*

*George E. Osburn, John W. Lindley, Beasley, Douthitt, Crawford & Beasley,* for appellant.
*Lee F. Bays* and *Hunt & Gambill,* for appellees.

TOWNSEND, C. J.—On October 8, 1913, appellant leased 241 acres of land to appellee Finkelstein to explore for oil and gas. On February 28, 1914, Finkelstein assigned the lease to appellee Osburn Oil Company. Appellant sought to quiet his title to this 241 acres by two paragraphs of complaint. In his second paragraph he sets out the lease and claims a breach of conditions therein, and also sets out a demand for the surrender of the premises, and asks that the lease be forfeited and his title quieted. Answers were general denial, and also paragraphs of special answer. Appellant's demurrers to the paragraphs of special answer were overruled. The cause was tried by the court, who made special findings of fact, stated his conclusions of law thereon, and rendered judgment for appellees.

Appellant assigns as error: (1) The overruling

of appellant's demurrers to the paragraphs of special answer; (2) that the paragraphs of special answer do not state facts sufficient to constitute a defense; (3) the overruling of appellant's motion for a new trial; (4) the court erred in its separate and several conclusions of law.

Appellant's demurrers to the paragraphs of special answer have no memorandum attached thereto. Therefore no question is presented by the first assignment of error. The second assignment of error is bad. The sufficiency of a pleading cannot be so questioned. The fourth assignment of error is waived because not briefed.

1-3.

The third assignment of error presents two questions: (a) Error of the court in admitting in evidence a release executed by the appellee Osburn Oil Company to a portion of the real estate described in the lease. (b) Error of the court in admitting, over the objection of appellant, evidence with reference to tests for the presence or absence of oil on lands adjacent to the real estate described in appellant's complaint.

The 241-acre tract of land lies in sections 7 and 12. That is to say, in two different ranges—151 acres lie in section 7; 61 acres lie immediately west in section 12. Projecting to the west from the sixty-one acres is a narrow strip containing twenty-nine acres.

The lessees put down three test wells on the premises. The third well was located in the center of this 29-acre strip and was the only producing well. A fourth well was drilled, which was nonproductive. Thereupon lessee Osburn Oil Company, pursuant to a condition in the lease, executed a release which described the 241-acre tract of land just as it was

described in the lease, but reserved from the release ten acres around this producing well.

Appellant's objection is that this release and reservation is too indefinite and uncertain in its description and that, therefore, the court erred in permitting it to be introduced in evidence. Appellee Osburn Oil Company introduced a plat of a survey made by an engineer and recorded at the same time the release was recorded. To this appellant objected upon the ground that the release did not refer to the plat. That is to say, that there was no language in the release that indicated that a plat had been made and filed as explanatory thereof.

Appellant, in order to make out his case in the first instance, so far as his title to the 29-acre strip is concerned, proved his title by deed record and

4.     by an order and decree in partition. Then, in order to complete his *prima facie* case, he introduced an answer of disclaimer, which the appellee Osburn Oil Company had filed, in which it disclaimed any interest in the 241-acre tract of land except the ten-acre reservation. This disclaimer embodied a description which it alleged was in the release and reservation, and which it alleged was shown by a plat made and recorded along with the release and reservation, and explanatory thereof. It is therefore unnecessary for us to devote any time to the proposition as to whether the description is too indefinite or not. When the plat is in evidence, appellant does not contend that the description is not sufficiently certain to locate exactly the ten-acre reservation and the well in the center thereof. He introduced this answer, which is a continuous narrative of what the oil company claimed and disclaimed. He will not be permit-

ted to introduce a judicial admission, not separable, a part of which is in his favor, and then be heard to object to that part which is against him. When he introduced the answer of disclaimer, which alleged that the exact description therein was in the release and reservation, and which referred to an explanatory plat executed and recorded contemporaneously with the release and reservation, then he will not be heard to object to the release and plat which, taken together, make the description definite and certain.

Appellant also contends that the release contains no granting clause. The release, after setting out a description of the ten-acre reservation, contains the following: "hereby surrenders, cancels, annuls and releases said oil and gas lease as to the balance of the real estate described, which balance of remainder of said real estate is as follows, to wit:" (Here follows same description of the real estate as in lease.) Appellant does not say what word or words should here be added to make this release sufficient. We are left to imagine that he means quitclaim. We hold it sufficient without that word.

The court did not err in admitting the release and plat in evidence.

Appellant next contends that the court erred in permitting appellee Osburn Oil Company, in cross-examination of appellant's experts and also in direct examination of its own witnesses, to inquire about the productiveness or nonproductiveness of wells on lands adjacent. Appellant says that the only question was whether the oil company had complied with its contract in drilling the required number of wells.

The provisions of the lease pertinent to a discussion of this question are as follows:

"It is further expressly agreed  *   *   *   that  *   *   *   second party shall drill and complete twenty-four wells on leased premises, per year from date hereof,  *   *   *   *provided oil or gas is found in paying quantities,* in which event second party agrees to drill a sufficient number of wells to equal one well on each ten (10) acres of said leased premises.  In the event second party fails to  *   *   *   complete said twenty-four wells as above set forth, within said stated time, then this lease shall cease and determine, and shall be null and void and second party shall forfeit all rights  *   *   *.  It is further agreed  *   *   *   that in the event that after a *reasonable test* shall have been made  *   *   *   and it shall be found that a portion of said leased premises is *not productive*  *   *   *   then second party shall have the right to have such portion of said leased premises surveyed, and shall have the right to execute a *written release* as to such surveyed portion  *   *   *   and shall record same, and after the recording of such release the said portion  *   *   *   so released shall be excluded from the operation of the terms of this lease,  *   *   *.  For the purpose of determining whether oil or gas exists in and under said leased premises, second party agrees to drill three wells to be called *test wells,*  *   *   *.  Said *test wells* shall be drilled for oil and gas whether *productive* or *nonproductive,* and shall be drilled to such a depth as shall be a *reasonable test* of said leased prem-

ises. Said test wells shall be considered a part of the total number of wells to be drilled the first year as hereinbefore provided for.''

It was further agreed in this lease that $1,000 should be deposited by the lessee in a named bank to guarantee the drilling of the three test wells within 120 days after the execution of the lease.

Appellee Osburn Oil Company drilled three test wells to the satisfaction of appellant, because he released the $1,000; but it seems to be the contention of the appellant that the oil company was required to drill twenty-four wells on these premises, or, at least, it was required to drill many more wells in order to properly explore for oil and gas.

By the terms of this lease three test wells, whether productive or nonproductive, were required. A greater number was required only upon the condition that ''oil or gas was found in paying quantities.'' Under the terms of such a lease it is for the operator, without fraud or bad faith, to determine whether the production reaches this standard. *Manhattan Oil Co.* v. *Carrell* (1904), 164 Ind. 526, 532, 73 N. E. 1084, and cases there cited.

The question is, Did the operator arbitrarily and in bad faith quit after drilling four wells, all of which were nonproductive except one? Were the prospects such that good faith would require him to go on? To determine these questions the court permitted evidence of explorations of other operators on adjacent lands. It was shown that around and near to this tract were fourteen wells, all of which were nonproductive except one which yielded one barrel per day.

The court found that the only producing well on appellant's farm was in the center of this ten-acre reservation; that it produced an average of ten barrels per day for one year; that at the time of the trial it was producing five barrels per day; that appellees had expended $8,431.46 in putting down the four wells, and equipping and operating this producing well; that appellees have, pursuant to the lease, received pay for two-thirds of the oil from this well, and appellant has received pay for one-third, pursuant to the lease; that appellees' share of the money is $3,572.91.

With the questions, which we have above indicated, to be answered, it surely cannot be said that it was not proper for the court to hear evidence of explorations on adjacent lands. The appellant's claim was that a reasonable test had not been made; that the operator, having found one well that was producing, was compelled to explore further, by virtue of the 24-well provision in the lease. To determine whether the operator had arbitrarily quit where prudent men, acting in good faith, experienced in the business, would proceed, no better evidence could be adduced to throw light upon this subject than the opinions of experts in the business, based upon the explorations on the premises and the results thereof, and explorations on the adjoining premises and the results thereof. The court did not err in admitting this evidence.

Judgment of the trial court is affirmed.

Harvey, J., absent.