[No. 20489. Department One. June 20, 1927.]

NATIONAL ASSOCIATION OF CREDITORS, INCORPORATED, *Appellant*, v. J. A. MENISH *et al.*, *Respondents.*[1]

[1] EVIDENCE (148)—ORAL EVIDENCE—CONTRACT FOR SALE OF LANDS —AGREEMENT TO MAKE DEED. An oral promise to a maker to discharge his note in consideration of a quit claim deed, not being to discharge a debt of another within the statute of frauds, may be proved by oral testimony.

[2] BILLS AND NOTES (88, 89) — DISCHARGE — RENUNCIATION — BY PARTY NOT HOLDER. Rem. Comp. Stat., § 3512, providing that the renunciation of the holder of a negotiable instrument must be in writing has no application where the maker of a mortgage note, only secondarily liable thereon as between the signers, discharges the other signers from all liability on the note in consideration of a quit claim deed to the property on which the note was secured; since such maker was not a holder of the note at the time of the promise.

[3] CONTRACTS (26)—RELEASE (2)—CONSIDERATION — PROPERTY AND RIGHTS THEREIN. A quit claim from vendees under a contract

[1]Reported in 257 Pac. 241.

> to purchase, who were in default and had abandoned the land,
> is sufficient consideration for a release of their obligation to pay
> a note given by them in the deal.

Appeal from a judgment of the superior court for
Grays Harbor county, Campbell, J., entered October
8, 1926, upon the verdict of a jury rendered in favor
of the defendants, in an action on contract.   Affirmed.

*O. S. Galbreath* and *H. B. Gardner,* for appellants.
*W. H. Abel,* for respondents.

MAIN, J.—This action is based upon a promissory
note which had been assigned to the plaintiff for col-
lection.   At the time the action was instituted, two
writs of garnishment were issued.   The trial before
the court and a jury in the principal action resulted in
a verdict in favor of the defendants.   The plaintiff
moved for a judgment notwithstanding the verdict and,
in the alternative, for a new trial, both of which were
overruled.   From the judgment entered dismissing the
action and discharging the writs of garnishment, the
plaintiff appeals.

The facts out of which the litigation arose are these:
On November 27, 1922, Mrs. Catherine Balch, being
then the owner of certain land in Grays Harbor
county, contracted to sell the same to G. E. Menish
and J. A. Menish, her grandsons, who will be referred
to as though they were the only respondents.   The
purchase price was five thousand dollars, one thousand
dollars of which was paid at the time and the balance
was to be paid on or before November 27, 1932, with
interest on the deferred payment at the rate of five
per cent. per annum.   In order to raise the one thou-
sand dollars which was to be paid at the time the con-
tract was executed by mutual arrangement between
the respondents and Mrs. Balch, and prior to the execu-
tion of the contract, one thousand dollars was bor-

rowed and a note secured by a mortgage upon the land sold was given. The note was signed by the respondents and Mrs. Balch. The understanding between them at the time was that the respondents should be primarily liable and that Mrs. Balch's liability should be secondary. After the contract was executed, the respondents entered into possession of the property and remained in such possession until a short time prior to the due date of the note, which was November 24, 1924. After the note became due, the payee was insisting that the obligation be satisfied.

In order to raise the money to pay the note, it was necessary to use the land as security for another loan. On November 14, 1925, the respondents gave to Mrs. Balch a quitclaim deed for the land which they had contracted to purchase, which recited a consideration of one dollar and "other valuable considerations". Thereafter, Mrs. Balch borrowed the money to take up the one thousand dollar note, and, at a later time, assigned the note as above stated to the appellant for collection. The defense to the action was that there had been an agreement between Mrs. Balch and the respondents that, if they would make the quitclaim deed, it would operate as a satisfaction of their obligation to pay the one thousand dollar note upon which they were primarily liable.

The first and, it seems to us, the principal question in the case is, whether there was sufficient evidence to take the question to the jury as to whether there was an agreement between the parties, at the time the quitclaim deed was executed, that the respondents should not be further obligated upon the note. Upon this question, which was directly submitted to the jury, the evidence is conflicting. One of the respondents testified in part as follows:

"Q. What was the valuable considerations that you folks received for making that deed. A. Why the note. Q. Was there any other consideration than the cancellation of the note, or was that all? A. That was all. It was to release us from all obligations."

There was further testimony by this witness to the same effect. There was evidence on behalf of the appellant that there was no agreement that the giving of the deed should release the obligation upon the note. This presented distinctly a question of fact, and the verdict of the jury is controlling.

[1] The appellant objected to the introduction of the evidence to the effect that the deed was a consideration for discharge of the liability of the respondents upon the note, but this evidence was properly admitted. This was not a promise to answer for the debt of another, but an original promise, if it was made, based upon an adequate consideration. It was therefore not within the statute of frauds. *Gay v. Schaeffer,* 52 Wash. 269, 100 Pac. 334; *Ginnett v. Greene,* 87 Wash. 40, 151 Pac. 99; *Washington Perfection Co. v. Davin,* 138 Wash. 427, 244 Pac. 697.

[2] Our attention is called to Rem. Comp. Stat., § 3512 [P. C. § 4193], where it is provided that the renunciation of the holder of a negotiable instrument must be in writing, unless the instrument is delivered up to the person primarily liable thereon. The facts of this case do not bring it within that statute. Mrs. Balch was not the holder of the note at the time the quitclaim deed was executed. She was only, as between the signers, secondarily liable. In *Handsaker v. Pederson,* 71 Wash. 218, 128 Pac. 230, it was held that an accommodation endorser who orally promised an accommodation signer to pay the note in any event, and save such party harmless thereon, was liable on

the promise.   In principle that case is controlling upon this question.

[3]   Finally, it is said that the quitclaim deed could not operate as a consideration for the release of the obligation to pay the note, because the respondents had neither the equitable nor legal title to the land, and had abandoned it prior to the time the deed was given.   Even though the contract of purchase did not operate to convey either the legal or the equitable title to the respondents, nevertheless they had rights under the contract of which Mrs. Balch could only deprive them in a legal way.   The giving of the deed made the property available as security for the new loan.   The fact that the respondents abandoned the possession of the land did not deprive Mrs. Balch of her right to enforce the contract against them.   It seems plain that the deed could operate as a valuable consideration for the release of the obligation of the respondents upon the notes, if the parties so agreed, as the jury has found.

The judgment will be affirmed.

MACKINTOSH, C. J., MITCHELL, FRENCH, and FULLERTON, JJ., concur.