## MEAGHER v. UINTAH GAS CO. et al.

No. 7723.   Decided February 11, 1953.   (255 P. 2d 989.)

124

See 58 C. J. S., Mines and Minerals, sec. 220. Transfer of oil lessor's interests as affecting successor's royalties. 24 Am. Jur., Gas & Oil, sec. 98; 135 A. L. R. 557.

*Gustin, Richards & Mattsson* and *Ray, Rawlins, Jones & Henderson*, Salt Lake City, *Oliver W. Steadman*, Cody, Wyo., for appellant.

*Herbert Van Dam, Jr.*, Salt Lake City, *Gilbert C. Wheat*, San Francisco, Cal., for respondent.

HENRIOD, Justice.

Again this case is here on appeal after we reversed a quiet title decision wherein a modified oil and gas lease was adjudged terminated. 1947, 112 Utah 149, 185 P. 2d 747. We held the lease still in force, remanding the case for further proceedings. We affirm the lower court in this present appeal, except that portion awarding operating rights in the North 40, which we order awarded to defendant Ashley Valley Oil, and except that portion awarding a 2% (oil, not gas) royalty to Meagher, which we order reduced to $1\frac{1}{3}\%$, remanding with instructions to modify the conclusions of law and judgment to conform to this decision, each party to bear its own costs on appeal.

Our former opinion outlined the facts prior thereto, and we refer to them. Since then, fee owner Meagher, by quit-claim delivered and recorded during pendency of mandamus proceedings designed to clarify the remaining portion of our former decision, has transferred his interest, reserving a royalty. Defendant Juhan has transferred his interest in the operating rights to Equity Oil, and it to Weber Oil, neither litigants here. Both companies joined in a working agreement with Stock and Juhan to drill. As a result oil was discovered in September 1948, producing $672,000 gross to trial time.

Since our former decision, three claims were allowed to be brought into the case: 1) Meagher's, by amendment to assert an oil royalty assigned in 1930 to Stock and Phebus, calling for reconveyance on condition broken; 2) Stock's, by counterclaim, to assert a one-half interest in operating rights in 440 acres, in opposition to Meagher's identical claim; and 3) Meagher's, by amended reply, to claim ownership of such interest by transfer from Stock. Working rights in the 440 spring from a 1924 oil and gas lease, modified in 1927. By mesne conveyance, Stock and Phebus each became owner of a half interest therein. Meagher claims nothing through Phebus, but claims a one-half interest through Stock's "release," principal subject of this suit, which, eliminating non-essentials, reads:

"Whereas, a certain oil and gas lease dated the 4th day of June, 1924, given by James Wash Sheridan * * * to R. C. Hill, lessee * * * was recorded on the 25th day of July, 1924 * * * and

"Whereas the lessee and his assigns agreed that upon failure to fulfill the terms of the lease, 'The lessee hereby agrees to relinquish, cancel and surrender the same to the lessors and to clear the record title of said lands from the lien or burden of said lease by making, executing, acknowledging and delivering a proper conveyance or release thereof and causing the same to be recorded' * * *

"Whereas, Paul Stock derived his interests by virtue of an assignment of the rights under this original lease;

"Whereas, the said lease and all rights thereto or incidental thereto are now owned by N. J. Meagher by virtue of cancellation of the lease by termination of production of oil and gas in accordance with the terms of the lease;

"Now, therefore, know all men by these presents, that Paul Stock does hereby cancel, release, relinquish and surrender to N. J. Meagher, his heirs and assigns, all of his right, title and interest in and to the said oil and gas lease, and all of his right, title and interest in and to the said oil and gas lease in so far as it conveys the lands above described.

/signed/ Paul Stock."

The lower court, on the evidence, held this instrument transferred Stock's interest to Meagher. We affirm such holding.

Appellants Stock, Phebus and Juhan claim error 1) in allowing Meagher to amend his reply to assert title acquired from Stock four days after action brought; 2) in holding Meagher the real party in interest; 3) in adjudging Meagher free from laches and 4) fraud; 5) in concluding the Release was supported by consideration; 6) in negativing mistake justifying rescission; 7) in failing to hold the Release abortive as a surrender or 8) a transfer; and 9) in allowing Meagher to litigate 2/3 of 1% royalty interest in this action. We agree only as to 9).

Appellant Ashley Valley asserts error in awarding operating rights in 40 acres (North 40) to Meagher instead of to Ashley Valley, with which contention we agree.

Mindful of principles heretofore enunciated that the trial court's findings will not be disturbed unless manifestly against the weight of the evidence,[1] appellants' objections are met in the order named.

1.  Meagher, by amendment, properly was permitted to attack Stock's alleged interest by pleading title acquired four days after commencement of the action. This action and most of the pleadings were filed before we adopted the new rules. Without discussing what impact, if any, the rules would have, had the action been brought after their adoption, we can say generally that an entirely new and different cause may not be pleaded by reply.[2] Nor could a plaintiff in a quiet title action assert title acquired after its commencement.[3] But there are ex-

---

[1]*Stanley* v. *Stanley*, 1939, 97 Utah 520, 94 P. 2d 465; *Haws* v. *Jensen*, 116 Utah 212, 1949, 209 P. 2d 229; *In re Linford's Estate*, 121 Utah 113, 239 P. 2d 200.

[2]*Hartford Accident & Indem. Co.* v. *Clegg*, 1943, 103 Utah 414, 135 P. 2d 919.

[3]*Welner* v. *Stearns*, 1911, 40 Utah 185, 120 P. 490, Ann. Cas. 1914C, 1175; *Rowley* v. *Davis*, 1917, 34 Cal. App. 184, 167 P. 162.

ceptions. Such title acquired after action begun, but before defendant pleads adversely, may be pleaded and proved in derogation of the defendant's adverse claim.[4] We cannot view Meagher's claim of one-half interest alleged in his amended reply as a new or different cause. After reversal by this court, he conceded only half ownership in the originally pleaded whole. Meagher's action persists on the same theory, — one to quiet title. One may allege a greater and prove a lesser title, as is held generally[5] and by this court,[6] and we see no reason to disturb the rule because the lesser is pleaded by reply. Appellants' authorities seem confined to cases of clear departure, and not, as here, to cases where the theory persists but the quantum of estate is reduced by amendment.

2. We think Meagher's transfer of interest during pendency of the action does not deny him a continued role as plaintiff, nor does that role do violence to former Title 104-3-19, U.C.A. 1943, or Rule 25(c), U.R.C.P., both of which allow prosecution of an action in the name of either grantor or grantee.[7]

3. Appellants' claim of laches by Meagher is not borne out in the record. Over the years Meagher pursued and acquired the fee, a landowner's royalty and the Release from Stock. He named Stock defendant, wrote him requesting a release to clear the record, and received the same 4 days after action filed, promptly recording it. He pursued his action against Stock no further, but complained to him by letter about a recorded quitclaim

---

[4]*Welner* v. *Stearns,* supra.

[5]74 C. J. S., Quieting Title, § 75, p. 115.

[6]*State* v. *Rolio,* 1927, 71 Utah 91, 262 P. 987.

[7]Utah Rules of Civil Procedure, 25(c): "In case of any transfer of interest, the action may be continued by or against the original party, unless the court upon motion directs the person to whom the interest is transferred to be substituted in the action or joined with the original party."

to the same property given to another.[8] Stock never answered this correspondence, asserted no claim, nor did his grantee, until nearly 5 years after Meagher brought action, 2 years after we validated the lease, and nearly 1 year after oil discovery. When he did appear by voluntary counterclaim, Meaher promptly resisted, pleaded title through Stock and without unreasonable delay pressed for trial. Under such circumstances we cannot say the trial court erred in exonerating Meagher from suspicion of laches.

4. As to the claim that Meagher was fraudulent by inserting recitals of forfeiture in the Release which he prepared for Stock's signature, and in correspondence with the latter, the simple answer lies in the facts that Stock admitted he had merely glanced at the Release and accompanying letter, thought he was signing a royalty transfer, and obviously was indifferent to and uninfluenced by such recitals and statements. All this predated our validation of the lease after lessee's 15 years of inactivity, all of which not unreasonably may have led a person to believe apparently as did Meagher, the trial court, and a dissenting Justice of this court, that forfeiture by abandonment had occurred, justifying the recitals. The fact that Stock did not rely on the recitals mentioned precludes rescission for fraud, since actionable fraud will not lie where one is induced to change his position, not because of any practical deceit, but because of his own mistake.[9] The record further seems to reflect that Stock was an oil man with a wealth of experience in oil matters involving large sums, an unlikely target for deception. His testimony at the trial contradicted his pleading that he relied on such recitals, since he stated he believed he was transferring oil royalties and that to date he had not read the counterclaim filed on his behalf.

---

[8]Under a trust agreement revealed at the trial, giving Stock 12½% of any proceeds from a proposed action against Meagher to test Stock's claim, if any.

[9]23 Am. Jur. 939.

5.  The Release was supported by sufficient consideration. Meagher's acceptance and recordation thereof relieved Stock of leasehold obligations, including a duty to match any offer of development by others, and the duty to drill if neighbors struck oil. Such relief from obligation will support a transfer.[10]

6.  That the Release was given by mistake warranting rescission could have merit if the record disclosed clear and convincing evidence of the mistake which Stock pleaded in his complaint, and diligence on his part promptly to rectify it. The record does not show clearly such mistake, and a five-year lapse in taking affirmative action to rectify hardly seems the type to satisfy the rule. Stock's admitted mistake was a belief he signed an oil royalty transfer, not a belief that he signed an instrument to clear the record because of forfeiture. On such facts, it does not seem unreasonable that the trial court concluded there was no mistake warranting rescission.[11]

7.  Since we conclude that Stock's interest passed, we need not discuss the Release as a surrender.

8.  Since Stock did not heed the recitals in the Release, they did not induce him to sign. Therefore, the authorities cited reflecting that intention to convey or not to convey may be interpreted by examing recitals in an instrument are inapropos. Hence we examine the words in the grant clause. We find the following:

> "Paul Stock does hereby *cancel, release, relinquish* and *surrender* to N. J. Meagher, *his heirs and assigns, all of his right, title and interest* in and to the said oil and gas lease, *and all of his right, title and interest* in and to the said oil and gas lease *in so far as it conveys the lands* above described."

[10] Williston on Contracts, Rev. Ed., Vol. 1, Sec. 115, p. 390; *National Ass'n of Creditors* v. *Menish,* 1927, 144 Wash. 150, 257 P. 241.

[11] Pomeroy's Equity Jurisprudence, Vol. 3, Sec. 859a; *Weight* v. *Bailey,* 1915, 45 Utah 584, 147 P. 899.

Our statute requires no word of art to quitclaim,[12] and in kindred cases a transfer was held intended and effected.[13] Care must be indulged in construing an instrument to pass title. Each case stands on its own words, combinations thereof, recitals and other attendant, facts, having in mind the rule that generally the instrument is construed in favor of a grantee.[14] We see no error in finding a transfer of interest upon the particular facts of this case. If none resulted this court fell into error in its former opinion when it assumed such transfer, saying:

"On Oct. 21, 1944, Stock released his interest in the lease to the plaintiff Meagher."

9. We believe the 2/3 of 1% (oil, not gas) royalty interest claimed by Meagher properly not determinable here. In 1930 he assigned such interest to Stock and Phebus, to be reconveyed on condition broken. 20 years later, 16 years after the right to have it returned, 6 years after commencing his action, and after oil was discovered, Meagher asserted his claim. During the 20 years there were many transfers of interest, some to persons not joined. Many questions may be posed as to intervening rights, right to specific performance or damages in a quiet title action, the matter of limitation of actions, rights of bona fide purchasers, estoppel, laches, etc., none of which we decide, but some of which well might vitally interest persons not joined. Should we decide any of these, we would look somewhat askance at, and with much less sympathy toward Meagher's claim of laches by Stock, than we would Stock's claim of laches by Meagher, after 20 years silence and an apparent indifference toward the 2/3 of 1% oil royalty that now looms large with discovery of oil. To hold Meagher the owner of the disputed percentage would require persons not parties to assume the burden and expense of asserting any

[12]Title 78-1-12, U. C. A. 1943, now Title 57-1-13, U. C. A. 1953.

[13]*Adams* v. *Reed*, 1895, 11 Utah 480, 40 P. 720; *Ruthrauff* v. *Silver King Western Min. & Mill. Co.*, 1938, 95 Utah 279, 80 P. 2d 388; *Osburn* v. *Finkelstein*, 1911, 189 Ind. 90, 126 N. E. 11.

[14] 16 Am. Jur. 530.

rights they might have therein. We believe Meagher should shoulder that burden in a different proceeding, if he is disposed to feel his claim meritorious.

As to the North 40: In June, 1924, 480 acres, including the North 40, were leased to Hill for 3 years. In October 1924, Hill assigned the operating rights in 440 to Utah Oil, reserving 40 and an overriding royalty. Hill apparently did nothing during the term, but transferees of rights in the 440 did sufficient to induce this court to conclude that operating rights were in good standing in the 440 in 1947. In November, 1927, Hill assigned the Utah Oil agreement to Ashley Valley. That company thereby not only acquired Hill's rights (other than operating rights) in the lease and the override, but assumed the burdens of the modified lease as to 440 acres. At the end of the 3-year term of the original lease, one Smith was fee owner of the entire 480 acres. However, prior thereto, on May 27, 1927, one week before expiration of the term, Smith signed a modification agreement with Ashley Valley, under the terms of which the entire 480 acres, "the lands the subject of this agreement," were included "insofar as they (the parties) have the power so to do." Utah Oil acquiesced by separate agreement with Ashley a few days later as to 440 acres. Hill signed neither and was bound by neither, but Smith bound himself to the terms, encumbered the fee therewith, and definitely obligated himself to include the North 40 if he had the "legal right and power so to do." We take it that a fair interpretation of such language requires the conclusion that if there were a reverter the next week when the term expired, he not only intended, but legally and equitably bound himself to recognize inclusion of North 40 rights in "the lands the subject of this agreement." No other logical conclusion can be indulged, since the parties to the agreement and consenting holders of landowner's royalties, of which Meagher was one, knew that rights in the North 40 were outstanding in Hill, inescapably leading to the conclusion that those agreeing and consenting, including

Meagher, intended the inclusion of the North 40 as to lessee's and override rights. The terms of the agreement would bind Smith's privies having knowledge thereof. Meagher not only was in privity with Smith, had knowledge of the terms, signed a rider consenting to its terms, but took the position, as stated in his brief, that being owner of a landowner's royalty, he was part owner in the property itself,—which, if true, should bind Meagher to its terms no less than landowner Smith. Under such circumstances it is difficult to understand how Meagher would not be duty bound to abide by what appears to have been an intention on his part to include the North 40 in the agreement when and if the parties, and himself, had the "right and power" to do it. Meagher had the "right and power" at any time after he became fee owner, and it hardly lies in his mouth to denounce what appears to have been his own solemn intention and consent.

It is significant that the modification agreement was signed one week before expiration of the original lease, which seems to point up an intention on the part of all consenting, to include the North 40 in the event Hill failed to comply. Hence, assuming a reverter, Smith and Meagher must be considered to have intended and agreed to include the North 40. Assuming no reverter, and that the work on the 440 acres kept rights in the North 40 alive, a matter discussed later, Ashley Valley obtained operating rights therein by virtue of Hill's transfer in October, 1930. Further evidence that Meagher intended the North 40 to be included in the agreement is found in his own reply, filed 18 years later, when he admitted that Smith and Ashley Valley

"with the consent of the royalty owners, entered into a modification agreement *whereby the lease* of June 4, 1924 * * * *was modified,*"

although Meagher qualified the quoted significant language in later pleadings.

One other matter bears discussion. The parties stipulated that if the North 40 were not included in the modification agreement, operating rights reverted to Meagher as Smith's grantee, otherwise they belonged to Ashley Valley. We are bound by this stipulation, but disagree with the reason upon which apparently it was based. It appears that an assumption was indulged that Hill, having transferred operating rights in 440 acres, nevertheless personally was bound to comply with all of the terms of the original lease on the North 40 which he reserved. Whether correct in believing such an assumption was indulged, we do say this : That *if* operations on the 440 acres satisfied the terms of the original lease of June 4, 1924, we are of the opinion that the lease was in good standing as to the North 40, the operations mentioned having inured to the benefit thereof as though conducted thereon,—thus preventing forfeiture and reverter. Such conclusion is sanctioned in a line of well reasoned decisions.[15] We believe the rule consonant with practically and common sense in an industry newly born in Utah, involving large expenditures, — where transfers of partial interests may be important in attracting necessary risk capital, not only to protect the whole tract, but to protect a lessee's retained interest until such time as he better may be able to develop it. There is something of an analogy, technically debatable, in annual labor cases relating to mining claims, where work performed on one claim which benefits others may be credited to such other claims.[16]

The rule expressed is as it should be, since the lessor seldom can be harmed if the work is accomplished anywhere on the leased premises, and the lessee, who may be

[15]*Gypsy Oil Co.* v. *Cover,* 1920, 78 Okl. 158, 189 P. 540, 11 A. L. R. 129; *Harris* v. *Michael,* 1912, 70 W. Va. 356, 73 S. E. 934; *Fisher* v. *Crescent Oil Co.,* Tex. Civ. App., 1915, 178 S. W. 905; *Walker* v. *Lane,* Tex. Civ. App., 1921, 233 S. W. 634; *Cowman* v. *Phillips Petroleum Co.,* 1935, 142 Kan. 762, 51 P. 2d 988.

[16]Morrison Mining Rights, 16th ed., p. 117; *Miehlich* v. *Tintic Standard Mining Co.,* 1922, 60 Utah 569, 211 P. 686; *Nevada Exploration & Mining Co.* v. *Spriggs,* 1912, 41 Utah 171, 124 P. 770.

one of hundreds of small undercapitalized investors in an infant industry, may take advantage of partial transfer to attract risk capital, retaining a portion of the tract unto himself, without facing the choice or risking all by expensive individual effort and expenditure, or losing all on the altar of the same risk capital.

McDONOUGH and WADE, J.J., concur.

WOLFE, Chief Justice (concurring in part—dissenting in part).

I am prepared to agree that operating rights in the North 40 should be awarded to the Ashley Valley Oil Company; and also in the awarding of 1-1/3% royalty in oil, not gas, to Meagher instead of 2% awarded by the lower court.

I am not prepared to hold that the so-called Release (Exhibit A-30) signed by Stock on October 21, 1944 was intended to be a conveyance of Paul Stock's interest in the lease of June 4, 1924 as the same was modified by the Modification Agreement of May 21, 1927, nor that it was anything but a "Release" of Stock's interest in the lease of 1924.

I concur in the holding that the two-thirds royalty interest of Meagher cannot be adjudicated in this action.

I concur as to the conclusion that no error was committed by the lower court allowing Meagher to amend so as to attack Stock's alleged interest by pleading title acquired four days after commencement of this action because issues had not then been joined and that no new cause of action was introduced by permitting Meagher to amend his reply. Also that Meagher could continue as plaintiff after he had assigned his interests to his children.

I agree that the charge that Meagher was guilty of laches in pursuing the present action and that the charges of fraud by Meagher have not been sustained by the evidence and that technically there is a consideration for the so-

called Release, whatever may be its extent and nature, but am not prepared to hold that it was intended to be nor was an instrument of conveyance, or if so that it conveyed Stock's interest in the lease of June 4, 1924 modified by the Modification Agreement of May 21, 1927, there being doubt that Stock acquiesced or agreed with such modification.

CROCKETT, J., concurs in the result.