# CHARLESTON.

HARRIS *et al.* v. MICHAEL *et al.*

Submitted June 7, 1910. Decided February 13, 1912.

1. MINES AND MINERALS—*Oil Lease—Construction.*
    When a lessee for oil and gas producing purposes segregates

the lease by assigning to another all rights thereunder as to a distinct parcel of the land, a discovery of oil on the part assigned will give the lessee a vested right to produce oil on the part retained, though he has taken no possession of that part.   (p. 359).

2.   SAME—*Vested Rights of Lessee—Waiver.*

   Where a lessee acquires a vested right to produce oil from land, but never takes actual possession of the premises, it may be shown that he has abandoned the right by proving his intention to do so from any facts and circumstances evidencing a voluntary waiver of the same.   (p. 360).

3.   SAME—*Oil Lease—Abandonment by Lessee.*

   A failure for ten years, on the part of a lessee holding a vested right to produce oil from land, to enter on the premises and undertake a fulfillment of the implied covenants of the lease which obligate him to operate the property, during all of which time an adjoining well is producing oil and presumably draining the neglected premises, sufficiently evinces an intention of the lessee to abandon his right.   (p. 360).

4.   EQUITY—*Laches—Demurrer.*

   A lessee, having a vested right to produce oil from land, who takes no possession and does nothing on the premises for ten years, and then, while a subsequent lessee is operating the property, remains silent as to his rights for seven years more, is so clearly barred by laches from asserting his neglected rights that his bill in equity showing the delay and silence will be dismissed on demurrer.   (p. 362).

Appeal from Circuit Court, Marion County.

Bill by Carey C. Harris and others against Pinkney Michael and others. Decree for defendants, and plaintiffs appeal.

*Affirmed.*

*Wm. Hess,* for appellants.

*U. N. Arnett,* for appellee Michael;   *Neely & Lively* and *L. D. Beall,* for appellee Freeland Oil Company.

ROBINSON, JUDGE:

In 1889, Pinkney Michael leased to Harris and Steel a tract of 146 acres for oil and gas producing purposes. The lessees agreed to drill a well on the premises within twelve months or thereafter to pay five hundred dollars a year until a well should be drilled. The lessor was to receive one-eighth

of all the oil produced and saved from the premises and two hundred dollars for each gas well. If a well was not drilled, a failure to pay the five hundred dollars for any year rendered the lease void. No term was fixed for the continuation of the privileges granted if oil was produced within the time provided for drilling. In this respect the lease is different from those usually employed.

No well was drilled within the twelve months; but the payment was made, so that the right to drill continued through the second year. Within the second year, in 1891, the lessees assigned their rights in the lease, as to 55 acres of the tract only, to Frank Burt, for no other consideration than Burt's promise to drill a well thereon within the limit of that year. They retained no interest whatever in that part. The 55 acre tract transferred to Burt was laid off and described by metes and bounds. Burt, or those to whom he assigned, put down a well on the 55 acres and produced oil. The well continued to be a producing one. In 1898, through various transfers or assignments, that well and the rights pertaining to it under the assignment to Burt came to the ownership of the original lessor, Pinkney Michael. Thus that portion of the original lease was merged into his greater estate, the ownership of the land itself.

The residue of the 146 acres was never developed by Harris and Steel, the lessees, or by anyone for them. They had wholly parted with their leasehold rights in the 55 acres of the original lease, as we have shown. The same had gone back to the lessor. They made no use of their leasehold rights in the residue of the 146 acre tract. So, in 1901, ten years after the drilling of the well, and more than three years after the rights on the 55 acres passed back to Michael, he ignored the former lease, as to which the holders thereof had for so long remained inactive, and again leased the residue of the tract, all but the 55 acres, to one McBride. Operations under the McBride lease were begun and continued. Oil was produced. The McBride lease was assigned to others. Five wells were drilled under this later lease on the residue of the tract. Still for seven years more, the original lessees remained inactive as to use or claim of their rights under the original lease. They silently permitted the five wells to be drilled during the seven

years by McBride and those claiming under him. Then, in 1908, seventeen years after the drilling of the Burt well, during all of which time Harris and Steel indicated no purpose to make the property beneficial to themselves or to the lessor, though for a great period of the time others were using it for profit, they filed their bill in equity claiming to be entitled to the oil, by virtue of their original lease, in that portion of the tract outside of the 55 acres, and demanded an accounting from those who had taken oil therefrom. They pleaded no excuse for the delay in the assertion of their alleged rights. The defendant demurred to the bill. The circuit court sustained the demurrer and dismissed the bill. Plaintiffs have appealed.

The statement of the case which we have made is a fair presentation of the material facts as they appear upon a reading of the bill. The direct allegations together with the reasonable inferences therefrom arising make the case as we have stated it. Are plaintiffs entitled to be heard in a court of equity?

The drilling of the Burt well was a compliance with the lease as to the whole tract. Harris and Steel, by the contract with Burt, caused that well to be drilled. As to them it pertained to the lease on the whole, though as to Burt it pertained only to the 55 acres. The drilling of this well and the producing of oil therefrom gave to Harris and Steel a vested right to produce oil and gas under their lease. As to all but the 55 acres which they had assigned away, that right remained to them under the lease on the whole. After the production of oil under the lease on the whole, they had a vested right to produce on the residue. We must inquire whether or not they lost that right.

It is assuredly true that where a lessee enters upon the leased premises and discovers oil or gas his right to produce the oil or gas becomes a vested right. It is equally true that he may divest himself of this right by intentional abandonment and relinquishment of the premises. Archer on Oil & Gas, 547. When there is such abandonment and relinquishment, the lessor may declare the lease forfeited by leasing to another. *Guffey* v. *Hukill,* 34 W. Va. 49. And, if the lessee had not actually entered on the land the relinquishment of his right to do so, or his abandonment, becomes purely a question of his inten-

tion; in which case, his intention to abandon may be established by proof of such facts and circumstances as evince a voluntary waiver of his rights. *Smith* v. *Root,* 66 W. Va. 633.

Harris and Steel never entered into possession of the premises to which their rights in the residue of the lease pertained. The possession of Burt, even if considered in their behalf, was of course limited to the 55 acres. If, as is said, he took possession for them, his possession extended no further than over the 55 acres which they sold him. They put him into possession of that part alone, so that he might drill a well and cause them to have vested rights as to the residue. But as to that residue his possession for them could not go, and they entered not upon it themselves. Besides, they had absolutely no concern in the part sold Burt when the sale to him had fulfilled their purpose in getting a well drilled. After the drilling of this well it cannot be said that he was in any manner acting on the premises for them. All their concern in the 55 acre part ceased as soon as Burt's agency in drilling the well was performed. As to Burt that well related to the 55 acres; as to Harris and Steel it related to the residue, but only to the extent of causing rights therein to vest in them. Both were interested in the drilling of the well, but neither was interested in the parcel of the other. Burt's remote relation to the original lease as an undivided one ceased absolutely when he finished the well. He was never in possession of the residue as to which Harris and Steel now claim rights. He was simply in possession of his own parcel, on which the drilling of a well gave them rights in the other parcel. But as to that other parcel they never saw fit to take possession.

Since the lessees never entered into actual possession of the premises to which their vested oil rights pertained, the question whether they relinquished their right to do so, whether they abandoned that right, must be determined alone by their intention in this particular. Their intention to abandon the lease may be established, as we have seen, by the proof of any facts or circumstances evidencing a voluntary waiver of their rights.

Surely a failure for ten years to enter and at the least to

make a start to develop the parcel which plaintiffs segregated to themselves from the whole, evidences intention on their part to abandon their rights under the lease as to it. If men ever intended to make use of such oil rights, it is reasonable to conclude that they would do so before the lapse of so long a period. If they really meant to make use of such rights, would they neglect those rights for ten years and all that time allow the oil to be drained from their lease by an adjoining producing well? They were getting nothing by the production of that well. If they ever meant to claim under the lease as to the residue, why let Burt and others drain it so long? Why stand by and see the lessor himself take the oil by the Burt well which became merged in his estate in the land? Surely their long and palpable neglect of the part of the lease which they retained, in the light of the circumstances surrounding that neglect, is evidence that they waived their rights. They divided into two parts the original lease so they could profit from one part of the land, in case Burt by a well on the other part proved the territory to be good. But for some reason they did nothing for ten years. Must we not conclude that they deemed the property unprofitable and cast it aside? Why allow Burt, and even the lessor himself, to take their oil by this well if they deemed it worth taking themselves? Moreover they were bound by implied covenants to produce and make a return for the lessor, if the property could be profitably worked. Would men ordinarily incur liability for failure to develop a profitable property? Indeed the facts and circumstances sufficiently establish that the lessor had right to conclude, at the time he gave the second lease, that the original lessees had deemed their rights not worth while and had waived them.

In cases of the character of this one, a failure to continue explorations for so long a period should raise a presumption of abandonment as matter of law. The very nature of the contract would seem to raise a presumption of abandonment when there is unreasonable delay in doing under the lease what the parties originally contemplated should be done under it. "There is no case which goes so far as to announce that after mere discovery of oil, the lessee, upon the assumption of vested interest or title, may cease operation, refuse to develop the property, tie up the oil by his lease and simply hold it for speculative pur-

poses, or to avail his own pleasure as to the time of development." *Parish Fork Oil Co.* v. *Bridgewater Gas Co.,* 51 W. Va. 583. Where one under duty to explore or to continue explorations for oil neglects to do so for a period plainly inconsistent with an intention to fulfill the duty or contract, his neglect should be taken to mean a waiver of his rights in the premises. In the case last cited, it was held: "The law recognizes a distinction between the abandonment of operations under an oil lease and an intention to abandon or surrender the lease itself. Unless bound by the terms of the lease so to do, it will not permit the lessee to hold the lease without operating under it, and thereby prevent the lessor from operating on the land or leasing it to others." And by an eminent authority it is said: "When there is an obligation expressed or implied to operate under the lease, the failure to do so either within the prescribed time, if there be a time prescribed, or within a reasonable time, will, if unexcused, amount to an abandonment." Barringer and Adams on Mines and Mining 170.

But, aside from the question of abandonment, there is another feature of the case fatal to plaintiffs. They clearly show themselves guilty of laches in the assertion of their rights. They have remained silent so long and have allowed such rights of others to attach that it would now be inequitable to hear them. For seven years after the giving of the second lease to McBride they have passively allowed operations for oil to be prosecuted thereunder. The property has passed from McBride to others. Five wells have been put down under the McBride lease. Plaintiffs have stood silently by and made no objection to the use and occupancy of the property—the great investment of money in it—by subsequent lessees. By their long silence, they have misguided others into expending money on the property. They show no justifiable excuse for their silence. It is not enough to say simply as they do that they were "seldom in the community." They are chargeable with knowing what was going on in relation to this property. If they were seldom in the community, then they were there at times. They had the opportunity of observing what was being done by others. They have plainly acquiesced in the operation of the property under the McBride lease. They cannot decline to assert their rights for seven

years and then be heard to assert them. "Where one has means of knowing or ascertaining his rights, where he is put on inquiry where ordinary prudence should impel him to inquire, he must do so or else time runs against him in the assertion of those rights. One who would repel the imputation of laches by showing ignorance of his rights must be without fault in remaining in ignorance of those rights. Indolent ignorance and indifference will no more avail to prevent the bar of laches than will voluntary ignorance. Equity aids only the vigilant." *Plant* v. *Humphries,* 66 W. Va. 88.

This additional seven years of neglect of the rights now claimed is another strong element proving that the lessor rightly assumed that plaintiffs had abandoned their right when he gave the second lease. If they had not then abandoned, why did they so long allow others to operate the property?

The bill is pregnant with an intention to abandon the rights now claimed, and with delay in asserting the claim. The demurrer was rightly sustained. The decree will be affirmed.

*Affirmed.*