### COX et al. v. SINCLAIR GULF OIL CO. et al. (No. 6761.)

(Court of Civil Appeals of Texas. Austin. May 28, 1924. Rehearing Denied Oct. 22, 1924.)

1. **Appeal and error ⟝917(1)—In determining sufficiency of pleadings facts alleged must be taken as true.**

In determining exceptions to sufficiency of pleadings facts alleged must be taken as true.

2. **Acknowledgment ⟝58—Pleadings alleging vice in wife's acknowledgment of lease of homestead held subject to exceptions.**

Where wife's acknowledgment of oil lease covering property constituting a homestead indicated regularity and compliance with statute, pleading alleging that same was made in presence of both husband and lessee, but containing no allegations of fraud, coercion, undue influence, or overreaching, *held* insufficient and subject to exception.

3. **Acknowledgment ⟝55(2)—Certificate of officer taking married woman's acknowledgment conclusive of facts therein in absence of allegations of fraud.**

Certificate of officer taking married woman's acknowledgment is conclusive of facts recited therein unless fraud or imposition is alleged.

4. **Action ⟝50(4)—Rule as to joinder of parties defendant stated.**

Where right sought to be enforced is general against all defendants having common or connected interest centered in point of issue, or where causes of action grow out of same transaction or involve same tort or breach of contract, or where all defendants are alike interested in subject-matter, and relief is against all such defendants, they are properly joined in same suit though their several claims and interests are diverse and independent.

**5. Equity ⊚⇒39(1)—Equity having acquired jurisdiction will retain same to give complete relief.**

When court of equity has acquired jurisdiction of cause of action against defendants properly joined, it will retain same for every purpose, and complete determination of all rights included in subject-matter, even to granting of purely legal remedies.

**6. Mines and minerals ⊚⇒78(7)—Petition in action for cancellation of lease held to state cause of action against all defendants as assignees of lessee.**

In action against all assignees of interest in oil lease petition alleging development of discovery well on one portion, but its negligent handling and abandonment and failure of the other defendants to make proper development after the discovery well had been completed, constituting constructive abandonment, *held* to state cause of action for abandonment against all defendants.

**7. Mines and minerals ⊚⇒78(2)—Oil lease may be canceled for breach of implied covenants to reasonably and diligently develop.**

An oil and gas lease may be canceled for breach of its implied covenants to. reasonably and diligently develop.

**8. Mines and minerals ⊚⇒78(7)—Failure to allege defendants' nonpayment of rentals in action to cancel lease for abandonment held not fatal defect.**

In action to cancel oil and gas lease on grounds of abandonment, brought six years after execution of lease, failure to allege nonpayment by defendants of the annual rentals *held* not to render petition insufficient where lease could have been kept in force and effect only for four years by the payment of such rental.

**9. Mines and minerals ⊚⇒78(7)—Admission of drilling of discovery wells in action to cancel lease held not to preclude relief.**

In action for cancellation of oil lease, which contained clause providing that if grantee discovered oil, etc., on completion of wells, conveyance would be effective for 25 years, or so long as oil was found in paying quantities, admission in petition that defendants had drilled a producing discovery well *held* not to preclude relief, in view of further averments that no reasonable and fair development of the lands had been thereafter made as contemplated by the implied covenants of lease and that well drilled had been abandoned and mishandled.

**10. Mines and minerals ⊚⇒77—Provision declaring lease effective for 25 years after oil discovered creates only determinable fee, and estate ended by abandonment.**

Clause of oil lease providing that if lessee discovers oil, etc., on completion of well, conveyance shall be effective for 25 years or so long as oil is produced in paying quantities, passes only determinable fee, and abandonment of mineral development and production ends estate created under implied covenants of the lease.

**11. Pleading ⊚⇒310—Lease attached to petition in action to cancel is part thereof.**

Copy of lease attached to pleadings in action to cancel is part thereof and the two are construed together in determining sufficiency of statements or averments of cause of action.

**12. Mines and minerals ⊚⇒78(1)—Assignees of lessee bound by express and implied covenants of lease and required to develop same.**

The several assignees of total interest of lessee in oil lease are bound to perform express and implied covenants of the lease which affect it as a whole, and to develop their respective segregated portions with diligence after producing discovery well is completed.

**13. Mines and minerals ⊚⇒74 — Separate assignees of lessee bound by acts of each other affecting lease as whole.**

All separate assignees of lessee's interest under lease are bound by acts of other assignees which affect the lease as a whole upon which all relied to establish their interest.

**14. Mines and minerals ⊚⇒78(1)—Drilling of discovery well by one of separate assignees of lessee vests right of all assignees to develop.**

Drilling of producing discovery well by one of several separate assignees of lessee under oil lease *held* compliance with terms of lease as affecting whole tract, and to vest in each particular assignee right and duty under implied covenants of lease to drill for oil on his respective acreage within reasonable time and develop with reasonable diligence.

**15. Mines and minerals ⊚⇒78(1) — What is reasonable time for commencement of drilling on segregated portion of lease determinable by surrounding facts and circumstances.**

What is a reasonable time for drilling and reasonable diligence in development of segregated portions of oil and gas lease by assignees is dependent on facts and circumstances surrounding such portion of lease.

**16. Mines and minerals ⊚⇒78(2)—Default by assignee of lease on whom other assignees are dependent warrants cancellation of lease as to all assignees.**

On failure of assignee of segregated portion of lease to properly develop as required by implied covenants, lessor is entitled to cancel lease of assignee so in default, or entire lease, as to all assignees, where they all rely on development by the one in default to vest in them the right to thereafter drill for oil.

**17. Mines and minerals ⊚⇒78(7)—Petition in action against several assignees of lessee's interest in wells to cancel same for abandonment held to state cause of action.**

A petition in action against separate assignees of total interest of lessee under oil lease to cancel same, alleging the drilling by some defendants of producing discovery wells and mishandling and practical abandonment, and that other defendants dependent upon such discovery wells for the vesting of their rights had not proceeded to develop in accordance with the implied covenants of the lease, *held* to state a cause of action.

⊚⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**18. Mines and minerals ⟲⟶78(7)—All assignees of segregated portions of lease held properly joined in action to cancel.**

Where assignees of segregated portions of oil lease depend upon the drilling of a discovery well or wells by one or more of their number for compliance with the terms of the lease, and to vest in them the right to thereafter prospect on their respective segregated portions, they may all be properly joined parties defendant in an action to cancel the lease for abandonment, consisting of nondevelopment after the drilling of producing discovery wells.

**19. Mines and minerals ⟲⟶78(7) — Separate assignee of segregated portions of lease held improperly joined in action to cancel for abandonment.**

Where action against all assignees of segregated portions of oil lease to cancel entire lease for abandonment and nondevelopment contained alternative prayer for cancellation of the lease as to the segregated acreage of any assignee who was found to be in default, *held* the court properly sustained exception to petition on the ground of misjoinder in so far as the prayer for alternative relief was concerned, though defendants were properly joined in respect to cancellation of entire lease.

**20. Mines and minerals ⟲⟶78(7)—Assignees of segregated portions of lease held improperly joined in action for damages for nondevelopment.**

In action against all assignees of segregated portions of oil lease to cancel entire lease for nondevelopment and abandonment, and in alternative for damages, *held* the court properly sustained exception to petition on ground of misjoinder of parties defendant in so far as the plea for damages was concerned.

### On Motions for Rehearing.

**21. Acknowledgment ⟲⟶58—Rule that pleading of fraud or imposition is unnecessary, where grantee of instrument knows certificate of officer taking acknowledgment does not state true facts, held inapplicable.**

Rule that, where grantee is present at time of acknowledgment and knows that certificate of officer does not recite true facts, no allegation of fraud or imposition is necessary, the allegation that he was present being sufficient, does not apply where grantee is not party to action involving such matter, and where there is no allegation that the defendants, assignees of the grantee had any notice of the defect.

Appeal from District Court, Brown County; J. O. Woodward, Judge.

Action by Marion M. Cox and others against the Sinclair Gulf Oil Company and others. Judgment for defendants, and plaintiffs appeal, and defendants assign cross-error. Affirmed in part, reversed in part, and remanded.

Wilkinson & McGaugh, of Brownwood, for appellants.

Harrison & Woodruff, of Brownwood, and E. H. Cavin, of Houston, and H. C. Peyton, of Brownwood, for appellees.

BLAIR, J. The trial court sustained certain special exceptions to appellants' petition, on the ground of misjoinder of parties defendant and causes of action, and, appellants having declined to amend or elect against which defendant or defendants they would proceed, the cause was dismissed.

[1] The cause having been determined upon exceptions to the appellants' pleadings, we must assume for the purpose of this decision that the facts alleged are true. Adams v. Bank (Tex. Civ. App.) 178 S. W. 993. The paramount issue, then, is whether or not appellants' pleadings on their face show a misjoinder of parties and causes of action. The court refused to sustain certain other special exceptions to the pleadings of appellants, and appellees cross-assign error thereon. These will be discussed in the opinion.

The suit was against numerous defendants to cancel an oil lease executed June 25, 1917, by appellant Cox and his wife, Ruth Cox, to D. R. Bailey, on about 1,100 acres of land in Brown county. Two grounds were alleged for cancellation: First, that all defendants had abandoned the lease; and, second, vice in the acknowledgment of the wife, Ruth Cox, to the lease as affecting the 200 acres constituting the homestead.

[2] As to the latter ground, we think the court should have sustained appellees' special exception to the petition on the ground that the facts alleged as to vice in the wife's acknowledgment affecting the homestead were insufficient. The only allegation of vice in her acknowledgment was that she acknowledged in the presence of the husband and not privily and apart from him, and that the lessee was also present. The certificate of acknowledgment was in conformity with the statute and regular in every way, and recited her privy acknowledgment. Neither fraud, coercion, undue influence, or overreaching was alleged to have been exercised upon her to induce her to either sign or acknowledge the lease.

[3] The rule is well settled in this state that the certificate of the officer taking an acknowledgment of a married woman is conclusive of the facts therein set forth, unless fraud or imposition is alleged. Hartley v. Frosh, 6 Tex. 208, 55 Am. Dec. 772; Brand v. Colorado Salt Co., 30 Tex. Civ. App. 458, 70 S. W. 578; Oar v. Davis, 105 Tex. 479, 151 S. W. 794; Essex v. Mitchell (Tex. Civ. App.) 183 S. W. 402; Stringfellow v. Brazelton (Tex. Civ. App.) 142 S. W. 938; Freiberg v. DeLamar, 7 Tex. Civ. App. 263, 27 S. W. 151.

On the question of cancellation for abandonment, the petition alleges the execution of the lease, a copy of which is attached as an exhibit and made a part of the pleading by reference, and, aside from its formal parts, reads:

"That I, Marion M. Cox, joined by my wife, Ruth Cox, of Brown County, Texas, the parties of the first part, in consideration of the sum of one dollar paid by D. R. Bailey, party of the second part, the receipt of which is hereby acknowledged, and the further consideration hereinafter mentioned, have granted, bargained, sold, and conveyed, and by these presents do grant, bargain, sell, and convey, unto the said party of the second part, his heirs and assigns, all of the oil and gas in and under the following described land, together with the right of ingress and egress at all times for the purpose of drilling, mining, and operating for gas, oil, or water, and to conduct all operations, to erect storage tanks and other necessary structures, and to lay all pipes necessary for the production, mining, and transportation of oil, gas, and water, with the right to use sufficient water, gas, or oil, to operate said property, and shall have the right to remove all machinery, fixtures, and improvements placed thereon at any time, reserving, however, to the parties of the first part the equal one-eighth of all oil produced and saved upon said premises, to be delivered in any pipe line to which well or wells may be connected, to the credit of the parties of the first part.

"Should gas be found the party of the second part agrees to pay to the party of the first part $100.00 each year, payable quarterly, for the product of each well on the premises, while same is being used; and party of the first part, by furnishing their own pipe connections, shall have sufficient gas, free of cost, for use in one dwelling house on the premises, so long as gas is utilized off the premises at their own risk.

"No well shall be drilled within 300 feet of any building now on said premises without the consent of said first party.

"Said land being of the following description, to wit: (Description follows.) * * *

"To have and to hold the above-described premises unto the said party of the second part, his heirs and assigns, on the following conditions: In case operations for the drilling of a well either for oil or gas is not commenced and prosecuted with due diligence within one year from this date, then this grant shall immediately become null and void as to both parties; provided, that second party may prevent forfeiture from year to year for four years, by paying to the first party the sum of twenty-five cents per acre for each year thereafter until such well is completed, and it is agreed that the completion of a well shall operate as full liquidation of all rentals under this provision during the remainder of the term of this lease, which payments can be made at Coggin National Bank of Brownwood, Texas, or be payable direct to the parties of the first part.

"In case the party of the second part should bore and discover either oil or gas, then in that event this grant, incumbrance or conveyance shall be in full force and effect for twenty-five years from the time of the discovery of such product, and as much longer as oil may be produced in paying quantities thereon.

"This grant is not intended as a mere franchise, but is intended as a conveyance of the property above described for the purpose herein mentioned, and it is so understood by both parties to this agreement.

"And I, Ruth Cox, wife of the said Marion M. Cox, for and in consideration of the sum of money above specified, do hereby release and relinquish unto the said D. R. Bailey all my right of dower and homestead in and to the said lands.

"It is understood by and between all the parties to this agreement that all conditions between the parties hereunto shall extend to their heirs, executors, administrators, and assigns."

As we interpret the petition, it then substantially alleges that all the defendants breached the implied covenants of the lease in failing to develop the lands for oil and gas, the real and substantial purpose and consideration for which it was executed; that all defendants had abandoned all intention to develop the lease, or any portion of it, for oil and gas; that all defendants had failed to drill offset wells to protect the oil and gas on the land in question from being percolated or drained to producing wells on adjoining lands; that all defendants had acted in bad faith as to complying with the implied covenants of the lease to develop, and had, under the guise and pretense of complying, fraudulently evaded their obligations and covenants to do so, and were holding their respective portions for speculative purposes only, not intending to ever develop same for oil and gas. It alleged further discovery of oil in paying quantities by some of the assignees on particular portions of the lease owned by them; also alleged neglect and failure on the part of the defendants owning the specific acreage on which the four wells were drilled to properly handle and care for them, causing waste of their actual and potential production, and that they had been abandoned; and failure on the part of all defendants to develop the specific acreage owned after the discovery well was drilled, as was their duty to do under the implied covenants of the lease. The relief sought was a cancellation of the lease and all assignments thereunder of record as a cloud upon appellants' title to the lands described; or alternatively for a cancellation of the lease and any specific assignment thereof as against any defendant shown to have abandoned the lease. Other specific allegations will be mentioned in the opinion.

In the alternative, appellants alleged a cause of action for damages for breach of the implied covenants of the lease, which will be later discussed.

[4] There is no difference between the parties as to the well and universally established rule of joinder of parties and causes of action that where the right or object sought to be enforced is one general right or object against all defendants, in which they have a common or connected interest centering in the point in issue, or that where the causes of action grow out of the same transaction, or involve the same tort or breach of contract by all defendants, or

where all defendants are alike interested in the subject-matter of the suit, and where the relief is against all, that they are properly joined as defendants in the same suit, though their several interests or claims in the subject-matter may be wholly diverse and independent of each other.

[5] The rule is also well established that, when a court of equity acquires jurisdiction of a cause of action with all defendants properly joined, it will retain jurisdiction for every purpose and for the complete determination of all rights involved in the subject-matter, even to granting purely legal remedies; the general purpose of such joinder being to avoid a multiplicity of suits, which is a well-established policy of our law. Morris v. McKinney, Dallam, Dig. 619; Yellow Pine Lbr Co. v. Carroll, 76 Tex. 135, 13 S. W. 261; Edinburg Irrigation Co. v. Ledbetter (Tex. Civ. App.) 247 S. W. 344; Milliken v. Callahan Co., 69 Tex. 209, 6 S. W. 681; O'Brien v. First State Bank, etc. (Tex. Civ. App.) 239 S. W. 714; Chambers et al. v. Cannon, 62 Tex. 293. The difference here is in the application of the rules to the particular pleadings.

The appellees cited by publication filed a formal answer through an attorney appointed by the court, and adopted the other appellees' brief on this appeal. About 30 defendants jointly defend in this suit, and in addition to the misjoinder exceptions insist by general and special exceptions that appellants' petition is insufficient, in that it alleges no facts entitling them to cancel the lease for abandonment. We think the petition states a cause of action, at least in one particular, against all defendants for abandonment.

[6] They also insist that the trial court should have sustained their special exception to the petition, on the ground that it only alleged a cause of action for a breach of the implied covenants of the lease; whereas it is contended that neither law nor equity will cancel a lease except for breach of its express covenants.

[7] The law is now well settled in Texas that an oil and gas lease like the one in this suit may be canceled for breach of its implied covenants to reasonably and diligently develop the leased premises for oil and gas. Grubb v. McAfee, 109 Tex. 535, 212 S. W. 464; Tex. Co. v. Davis (Tex. Sup.) 254 S. W. 304; Robinson v. Jacobs (Tex. Sup.) 254 S. W. 309; Guffey Petroleum Co. v. Oliver (Tex. Civ. App.) 79 S. W. 885; Benavides v. Hunt, 79 Tex. 383, 15 S. W. 396. Leases almost identical to the one in this case were construed in the above last cited cases to be executed, taking into consideration all the terms, for the purpose of prompt and diligent development of the oil and gas on the leased premises.

[8] It is also insisted that the petition having failed to allege a failure on the part of defendants to pay the annual rentals, such failure being the only provision expressed in the lease whereby it could be canceled, that it alleged no cause of action. The payment of rentals has no relation to this case. The lease could have been kept in force and effect only four years under its rental clause. The record shows that more than six years had elapsed from the date of the execution of the lease until this suit was filed. The petition does not base the right of cancellation in this case upon the failure to pay annual rentals. The petition alleges the drilling of a discovery well or wells on a part of the lease, and that they were producers of oil in paying quantities. After the discovery well was drilled with required diligence, appellees were vested with title in the leasehold from that time, and the rental payment clause of the lease which prevented a forfeiture from failure to drill had no application thereafter. Tex. Co. v. Davis and Robinson v. Jacobs, supra.

The drilling of a discovery well or wells upon the lease with diligence is the only other stipulation in the lease whereby title and the right to further develop the lands for oil and gas, after the rental payment clause had expired, might be had.

[9] It is also insisted that, the petition having alleged the drilling of a well, under the terms of the lease no forfeiture could be had for 25 years, or so long thereafter as oil and gas were found in paying quantities. The petition alleged the drilling of wells by some of the assignees on specific acreage, which was alleged to have been done under the guise and pretense of complying with the terms of the lease, but that it was a fraudulent effort to evade the covenants and obligations of the lease, and not a reasonable or fair development of the lands for oil and gas, and that none of the appellees had ever complied with the implied covenants of the lease as to reasonable and diligent development of the lands for oil and gas. It also alleged the drilling of wells and their abandonment. It also alleged that the wells drilled were producers of oil in paying quantities, but the defendants improperly handled them; that they had negligently permitted them to become choked and fouled, and had abandoned them. It further alleged that, although oil had been found in paying quantities in the wells drilled, all defendants had refused to further develop the lands as was their implied obligation to do; and that all had abandoned the lease with the intention to never develop, but were holding the lease only for speculative purposes. These allegations, for the purpose of this decision, must be taken as true.

[10] It is also well established by the last two authorities cited that a clause in a lease providing if the grantee discovers oil,

etc., on completion of a well, the conveyance, to be effective for 25 years or so long as oil is found in paying quantities, only passes a determinable fee, and abandonment of mineral development and production would necessarily end the estate created by the grant under the implied covenants of the lease.

[11] The copy of the lease attached to the pleadings, under the modern rules of practice, became a part of the declaration of the petition, and both are construed together in determining the sufficiency of the statement or averments of the cause of action. Fuqua v. Pabst Brewing Co., 90 Tex. 298, 38 S. W. 29, 750, 35 L. R. A. 241; Greeff v. Equitable L. Ins. Co., 160 N. Y. 19, 54 N. E. 712, 46 L. R. A. 288, 73 Am. St. Rep. 659; 21 R. C. L. 476, sec. 39; 35 L. R. A. 241; 31 Cyc. 560, § 3. The lease, in fact, became the foundation of appellants' cause of action in this case; for by its terms or covenants, either express or implied, they must establish such an *abandonment as will entitle them to cancel it.*

Therefore a further interpretation of the lease, together with the pleadings, is necessary to a decision in this case. The lease was the common source of title of all the appellees. It was the common source of right of them all. They entered a common defense in this suit, and rightly so, because some of the issues raised involved their common defense as affecting the lease as a whole, especially on the one count of the petition now under discussion. The original lessee, Bailey, having assigned all his interest in the leasehold before any operations looking to developing the lands for oil and gas were commenced, was not made a party defendant.

[12] Appellees as assignees of Bailey secured just the same interest that he had in the lease at the time of the assignment. They also became bound to perform the express and implied covenants of the lease which affected it as a whole, and, at least, became bound to develop their respective segregated portions with diligence after the discovery well was drilled. Pierce-Fordyce Oil Ass'n v. Woodrunn (Tex. Civ. App.) 188 S. W. 253; Harris v. Michael, 70 W. Va. 356, 73 S. E. 934.

[13] All assignees became bound by any act of another assignee which affected the lease as a whole, and upon which they all relied to establish their interest in the leasehold. Bailey, by assignment of specific acreage to named assignees, segregated in them distinct portions of the leased premises; but they each secured all his rights affecting the lease as a whole.

[14] The drilling of a well by any one of the assignees on his particular segregated acreage, if a producer of oil in paying quantities, was a compliance with the terms of the lease as affecting the whole tract conveyed to Bailey, and vested the right in each assignee to drill for oil on his particular acreage, even though those not drilling had taken no possession of their respective acreage theretofore. Harris v. Michael, supra; Nat'l, etc., Co. v. Teel, 95 Tex. 586, 68 S. W. 979; Thornton on Oil & Gas, vol. 1, pp. 352–353, § 220, note 2. It became the duty, under the implied covenants of the lease, after the discovery well or wells were completed, of each assignee to commence within a reasonable time, and to prosecute with reasonable diligence, the development of oil and gas on their respective segregated portions of the lease.

[15] The reasonable time for commencement of drilling and the reasonable diligence to develop depended on the facts and circumstances surrounding each segregated portion of the lease.

[16] A failure to so develop would authorize the lessor to cancel the lease as to each assignee so in default Likewise would the lessor be entitled to cancel the entire lease as to all assignees of segregated portions for the failure of any one of the assignees to develop his segregated portion. where they all rely upon his acts of development to vest in them the right to thereafter drill for oil or gas. Such reliance on another assignee to vest this right is at the peril of those so relying. Harris v. Michael, supra.

[17] This construction of the lease, and the fact that the assignees not drilling had only the drilling of a discovery well or wells by other assignees on their particular acreage to vest in them title to their portion of the leasehold, taken together with the allegations of the petition that only a part of the assignees had attempted to drill wells and develop their respective acreage; that these wells, if properly handled, were producers of oil in paying quantities, but that they were not so handled and had been abandoned; that such acts did not constitute a reasonable and diligent search for oil under the implied terms of the lease, and were a fraudulent effort to comply with the terms of the lease, together with the allegation that none of the other assignees attempted to develop their respective acreage after the discovery wells were drilled—leads us to conclude that the petition alleged facts necessary to constitute a cause of action entitling the lessor to cancel the lease for abandonment for failure to reasonably and diligently develop for oil and gas, and affects the whole lease, since such acts of development were relied upon by all assignees to vest title in them to their respective portions of the lease

[18] The same testimony would establish the lessors' right to cancel the lease as to them all. A joint judgment could be rendered against them all. So, we conclude that, un-

der the rules of joinder herein announced, where it is pleaded that numerous assignees of distinct or segregated portions of an oil and gas lease all rely upon the drilling of a discovery well or wells by one or more of the assignees on their respective segregated portion of the lease, for a compliance with the terms of the said lease to vest in them all the title and the right to thereafter prospect for oil and gas on the respective segregated portions of the said lease owned by them, that they are all properly joined in a suit by the lessor to cancel the whole lease, the petition alleging an unfair and unreasonable effort on the part of the assignees drilling to develop the oil and gas; and that the efforts of the drilling assignees were fraudulent and done under the guise and pretense of complying with the terms of the said lease; and that they had abandoned the well or wells drilled and the premises, never intending to develop them; and all assignees were holding the lease solely for speculative purposes, in the hope that its value would enhance by reason of the development of oil and gas on lands adjoining the lease, on which said adjoining lands producing wells existed and others were being developed.

[19] As to that portion of the first count of the petition which prays in the alternative for cancellation as to the segregated acreage of any assignee who might be found to have abandoned it, in the event it was found that appellants were not entitled to cancel it as a whole against all assignees, we think the trial court correctly sustained the misjoinder exceptions thereto. Neither equity nor justice would require all the assignees of segregated portions of the lease to be joined in an action in which it was to be determined whether anyone, or all of the assignees of the entire lease had individually as to their respective acreage breached the implied covenants to develop for oil. Many things not mutual to all assignees alike would likely enter into the proof of each case. The reasonable time required to commence development would naturally be established by different proof. One portion of the large lease might be in such close proximity to a producing well on adjoining lands as to require immediate development, while other portions further away might be in no danger of being drained. The issue of whether one assignee failed to properly and reasonably develop his portion of the lease cannot as a rule affect the other assignees or the lease as whole, after title and the right to develop has been vested in them all as to their segregated portions; and neither equity nor justice, nor the rule against a multiplicity of suits, would require that a great number of assignees of a lease sit by until issues between the lessor and another assignee, for which they were not responsible, be tried, even though the same character of breach is alleged against them all.

[20] Likewise do we think that the court correctly sustained the misjoinder exceptions to the alternative plea for damages. Although all assignees of portions of a lease might be held in one suit to cancel it as a whole, where they all rely upon the same acts of development to vest title in them to their respective portions, still they cannot be held jointly liable for damages for breach of the covenants of the lease to reasonably develop, since each assignee is charged with diligent development only as to his segregated portion. The same argument as to the proof necessary to establish a cause of action against each assignee for damages for failure to develop his individual portion of the entire lease applied above can be here applied with more force. The location, the surface, the proximity of oil production on adjoining lands, subjecting one portion to drainage more than another, as well as the general natural surroundings of each particular segregated acreage, present in each instance a separate state of facts requiring different proof, and furnish no mutuality of demand, even though fraud by all assignees as to their efforts to develop is alleged. There can be no mutuality of interest affecting all assignees as to development, for they are each bound to only develop their individual acreage. Ford v. Sutherland Springs Land & Town Co. (Tex. Civ. App.) 159 S. W. 876.

For the reasons stated in the opinion, the judgment of the trial court is affirmed in part, and in part reversed and remanded.

Affirmed in part, and in part reversed and remanded.

## On Motions for Rehearing.

[21] Both the appellants and the appellees have filed motions for a rehearing. Appellants insist that we erroneously held that the certificate of the officer taking an acknowledgment of a married woman is conclusive of the facts therein set forth, unless fraud or imposition is alleged. They contend that, where the grantee of the instrument is present at the time of the acknowledgment and knows that it does not recite the true facts, no such allegation is necessary, but that an allegation that he is present is sufficient. This contention is correct, but we thought it not applicable to this case, because the lessee or grantee who was alleged to be present at the time the acknowledgment was taken is not a party to the suit, and it is further alleged that the defendants, appellees here, are the assignees of all the rights, etc., of the lessee, and no allegation is made that they had any notice that the husband of the married woman was present when her acknowledgment was taken, and without such allegation they stand as innocent purchasers. With this explanation, both the motions for a rehearing are overruled.

Motions overruled.